Mr. David C. Weigel Collier County Attorney 3301 Tamiami Trail East Naples, Florida 34112-4902
Dear Mr. Weigel:
You ask substantially the following question:
May tourist development tax revenues be utilized to purchase beachfront land to be used as an additional public preservation and recreation area?
In sum:
Tourist development tax revenues may be used to purchase beachfront land in Collier County if the county commission makes the requisite findings that this expenditure will promote tourism within the county or that the purchase of this parcel will improve, maintain, or restore the beach park.
The Barefoot Beach Preserve (the "Preserve")is located between Little Hickory Bay and Wiggins Pass on the Gulf of Mexico on the Collier County side of the border of Lee and Collier counties. The Preserve is adjacent to the Delnor Wiggins State Recreation Area and consists of 342 acres of land abutting the Gulf of Mexico on one side and fresh water inlets on the other.
Collier County entered into a fifty-year lease with the State of Florida for management of the Preserve in 1990. It has been kept in its natural, pristine condition. The Preserve is used as a recreation area, with nature trails, and areas for kayaking, swimming and canoeing. Information included with your request indicates that a number of endangered species are resident in the Preserve and that tours of the Preserve are offered by volunteers and by park rangers.[1]
Within the Preserve is a small, approximately 1.75-acre "out parcel" that is privately owned and includes beachfront. This "out parcel" is being considered for purchase by the county in order to form a complete 342 acre Preserve. The front portion of the Preserve is a beach and is used for recreational pastimes such as swimming. Access to the beach is limited to noncommercial vehicles. Other proposed tourist related activities for the area included in the Collier County Land Management Plan for the Barefoot Beach Preserve are designated pathways that will connect to both existing and planned nature trails. The physical development for roads, parking and structures is limited to 5 percent of the Preserve's land area. In addition to the beaches in the Preserve, recreation is also provided to tourists and the general public nearby in Corkscrew Swamp Sanctuary, Big Cypress National Preserve, Everglades National Park, Collier Seminole State Park, Koreshan State Historic Site, Fakahatchee Strand Preserve and Rookery Bay National Estuarine Reserve.
According to information you have supplied to this office, Collier County's use of tourist development tax revenues as a source of funding for the purchase of the remaining privately owned "out parcel" is appropriate because the preserve, as a destination, promotes and enhances tourism. The land purchase is for a beach park facility that will preserve and conserve a natural shoreline that is a valuable and scarce resource. Purchase of this property will make the entire shoreline park publicly owned and contiguous. Pursuant to its land use plan, Collier County would be able to control, maintain, and ensure the conservation of the entire area as a undeveloped park for eco-tourists and the general public.
Section 125.0104, Florida Statutes, is the "Local Option Tourist Development Act." The act authorizes a county to impose a tax on short-term rentals of living quarters or accommodations in "any hotel, apartment hotel, motel, resort motel, apartment, apartment motel, roominghouse, mobile home park, recreational vehicle park, or condominium" within the county unless such activities are exempt pursuant to Chapter 212, Florida Statutes.[2]
Subsection (5) of the act sets forth the authorized uses of revenue generated by the tourist development tax. Pursuant to section 125.0104(5)(a), Florida Statutes:
"All tax revenues received pursuant to this section by a county imposing the tourist development tax shall be used by that county for the following purposes only:
1. To acquire, construct, extend, enlarge, remodel, repair, improve, maintain, operate, or promote one or more publicly owned and operated convention centers, sports stadiums, sports arenas, coliseums, or auditoriums, or museums that are publicly owned and operated or owned and operated by not-for-profit organizations and open to the public, within the boundaries of the county or subcounty special taxing district in which the tax is levied. Tax revenues received pursuant to this section may also be used for promotion of zoological parks that are publicly owned and operated or owned and operated by not-for-profit organizations and open to the public. However, these purposes may be implemented through service contracts and leases with lessees with sufficient expertise or financial capability to operate such facilities;
2. To promote and advertise tourism in the State of Florida and nationally and internationally; however, if tax revenues are expended for an activity, service, venue, or event, the activity, service, venue, or event shall have as one of its main purposes the attraction of tourists as evidenced by the promotion of the activity, service, venue, or event to tourists;
3. To fund convention bureaus, tourist bureaus, tourist information centers, and news bureaus as county agencies or by contract with the chambers of commerce or similar associations in the county, which may include any indirect administrative costs for services performed by the county on behalf of the promotion agency; or
4. To finance beach park facilities or beach improvement, maintenance, renourishment, restoration, and erosion control, including shoreline protection, enhancement, cleanup, or restoration of inland lakes and rivers to which there is public access as those uses relate to the physical preservation of the beach, shoreline, or inland lake or river. In counties of less than 100,000 population, no more than 10 percent of the revenues from the tourist development tax may be used for beach park facilities."
In addition, in counties with a population of less than 600,000, certain other uses are authorized by subsection (5)(b), which provides, in part:
"Tax revenues received pursuant to this section by a county of less than 600,000 population imposing a tourist development tax may only be used by that county for the following purposes in addition to those purposes allowed pursuant to paragraph (a): to acquire, construct, extend, enlarge, remodel, repair, improve, maintain, operate, or promote one or more zoological parks, fishing piers or nature centers which are publicly owned and operated or owned and operated by not-for-profit organizations and open to the public."
I would note that Collier County has a population of approximately 250,000 based on the most recent decennial census.[3] Thus, the provisions of section 125.0104(5)(b), Florida Statutes, would apply to the county.
In an earlier Attorney General Opinion,[4] this office concluded that the intent and purpose for the "Local Option Tourist Development Act," section 125.0104, Florida Statutes, "was to provide for the advancement, generation, growth and promotion of tourism, the enhancement of the tourist industry, and the attraction of conventioneers and tourists from within and without the state to a particular area or county of the state." That opinion went on to make it clear that
"[t]he determination whether a particular facility or project, tourist development plan or program is tourist related and furthers such primary purpose is a factual determination which must be made by the legislative and governing body of the county founded upon appropriate legislative findings and due consideration of the peculiar and prevailing local conditions and needs; it is not a determination which this office can make for a county."[5]
Any such determination must show a distinct and direct relationship between expenditure of tourist development tax revenues and the promotion of tourism.[6]
Prior to its amendment in 1997 to include "beach park facilities" within the uses for which tourist development taxes may be used, this office had considered and discussed the use of such funds for "beach improvement, maintenance, renourishment, restoration, and erosion control". Attorney General Opinion 90-55 considered whether the language of the statute would authorize the construction of artificial structures, such as sanitary facilities, upon the beach. The opinion concluded that the terms "beach improvement, maintenance, renourishment, restoration, and erosion control" read together related to the actual, physical nature of the beach rather than authorizing the construction of artificial structures upon the beach or authorizing other activities which did not protect or enhance the physical nature of the beach. Thus, improvements to the actual physical nature of the beach are authorized by section 125.0104, Florida Statutes.
In Attorney General Opinion 97-48, this office was asked to consider whether a county could use tourist development tax dollars to construct an artificial reef to provide diving and snorkeling opportunities in waters bordering the county. Information provided with the opinion request suggested that the proposed artificial reef was to be part of a larger scheme to develop an aquatic nature center. After determining that an aquatic nature center could be characterized as a nature facility within the scope of section 125.0104(5)(b), Florida Statutes, it was concluded that tourist development taxes could be used for its development. The opinion notes that "[u]ltimately, however, the determination of whether a particular expenditure satisfies the requirements of section 125.0104, Florida Statutes, is the responsibility of the governing body of the county and cannot be delegated to this office."
Similarly, based on a determination by the county that the purchase of this property will promote tourism or that the purchase of this "out parcel" will improve, maintain or restore the beach park, tourist development tax revenues may be used to fund such a project. In addition, it would appear that this area might well be characterized as a nature center that is publicly owned within the scope of section 125.0104(5)(b), Florida Statutes, and that Collier County, as a county with a population of less than 600,000, may use tourist development tax revenues to "acquire . . . extend, enlarge . . . [or] improve. . . ." such a center.
Thus, it is my opinion that tourist development tax revenues may be used to purchase beachfront land to be used as an additional public preservation and recreation area in Collier County if the county commission makes the requisite findings that such expenditures will promote tourism within the county or that the purchase of this parcel will improve, maintain, or restore the beach park.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgh
[1] See, "Nature Lovers Hail County's Decision to Acquire Barefoot Beach Preserve Lot", Naples Daily News, Sunday, February 18, 2001.
[2] Section 125.0104(3)(a), Fla. Stat.
[3] See, Census 2000 Redistricting Data, County (totals), at www.floridacensus.com.
[4] Attorney General Opinion 83-18 (1983).
[5] And see, Ops. Att'y Gen. Fla. 98-74 (1998), 97-48 (1997), 92-66 (1992), 87-16 (1987), concluding that a determination of whether a project is tourist related and furthers such primary purpose is a factual determination which must be made by the legislative and governing body of the county founded upon appropriate legislative findings and due consideration of the peculiar and prevailing local conditions and needs.
[6] Attorney General Opinion 98-74 (1998).